UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICOLE M. GIANNINI,

        Plaintiff,

      v.

UNITED COLLECTION BUREAU, INC.,

        Defendant.

No. 20 CV 5131

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Nicole Giannini took out a loan from her bank that she ultimately could not pay back. United Collection Bureau, the current creditor's debt collector, sent Giannini a letter notifying her that her account had been placed with its office for collection, offering to settle for less than the full amount of the debt, and providing a notice describing the current creditor's privacy policy. One month later, UCB sent Giannini another letter with three new settlement offers. Giannini takes issue with the language of the settlement offers in both letters—namely, UCB's inclusion of the phrase "we are not obligated to renew this offer"—and the inclusion of the privacy notice. She sues UCB under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p. UCB moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6), contending that Giannini lacks standing and fails to state a claim. The motion is granted based on the complaint's failure to state a claim.

## I.    Legal Standards

A complaint must contain a short and plain statement that plausibly suggests a right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A motion under Federal Rule of Civil Procedure 12(b)(1) contests the court's subject-matter jurisdiction. A challenge to standing—a jurisdictional requirement—can take the form of a facial or a factual attack on the plaintiff's allegations. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). When, as here, a defendant launches a facial attack on standing, the question is "whether the allegations, taken as true, support an inference that the elements of standing exist." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020).

If the court has jurisdiction, then it must proceed to the motion to dismiss for failure to state a claim. *See Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor, but I disregard legal conclusions or "threadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678. A plaintiff must provide "more than labels" or "a formulaic recitation of a cause of action's elements," *Twombly*, 550 U.S. at 555, and the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562.

2

## II.    Facts

Nicole Giannini obtained a loan from a bank that she ultimately could not pay off. [21] ¶¶ 14–15.[1] The bank sent her a letter on March 13, 2020, telling her that it had sold her debt to Sherman Originator III LLC. *Id*. ¶ 16.

Three days later, United Collection Bureau sent a letter to Giannini attempting to collect the debt on behalf of LVNV Funding LLC. *Id*. ¶¶ 17–18. The March 16 letter identified LVNV as the current creditor, but because it did not indicate how LVNV came to possess her debt, the letter confused Giannini. *Id*. ¶¶ 18, 25, 28–29. The letter also notified Giannini that her account had been placed with UCB for collection; it identified her bank as the original creditor, the last four digits of her account number, and the account balance. *Id*. ¶¶ 18–21, 27. The letter stated that "a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency by the current account owner if you fail to fulfill the terms of your credit obligations. This notice in no way affects any rights you may have." *Id*. ¶¶ 18, 22. The letter also listed the statutory rights and disclosures required under 15 U.S.C. § 1692g(a). *Id*. ¶ 34.

The March 16 letter also stated that UCB was authorized to offer Giannini a settlement for less than the full amount of the debt. *Id*. ¶ 18. After the offer, UCB noted that "[w]e are not obligated to renew this offer." *Id*. ¶¶ 18, 35. When Giannini read the settlement offer, she worried that if she did not pay by the deadline, she

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the amended complaint, [21].

would not have another chance to settle for less than the full amount. *Id*. ¶ 42. Giannini avoided paying off other creditors to try to take advantage of the offer, but she was unable to secure the funds necessary to do so. *Id*. ¶¶ 43, 45. This caused Giannini's other debts to remain in default status and to accrue interest; it also led to negative credit reports and a drop in her credit score. *Id*. ¶ 45.

UCB included a privacy notice with its March 16 collection letter. *Id*. ¶¶ 62–63. The notice "describe[d] the general policy" of fifteen related companies (so-called "Resurgent Companies"), including LVNV and Sherman, "regarding the personal information of customers and former customers." *Id*. ¶ 63. The notice informed Giannini that Resurgent Companies may collect her personal information from four sources: (1) her account file "at the time we purchase or begin to service your account;"(2) discussions or transactions with Giannini; (3) consumer reporting agencies; and (4) third-party information providers. *Id*.[2] The notice also specified certain kinds of "collected information" that the Resurgent Companies may obtain from these sources, including Giannini's name, address, social security number, assets, income and payment history, credit history, credit worthiness, and public records such as bankruptcy and mortgage filings. *Id*.

The notice went on to state that Resurgent Companies restrict access to Giannini's collected information to "individuals who need to know [it] … to perform

---

[2] Giannini attaches the privacy notice as an exhibit, so I examine it independently. *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007) ("A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document.").

certain services in connection with" her account. *Id*. It also noted that Resurgent Companies maintain physical, electronic, and procedural safeguards to protect collected information. *Id*. The privacy notice further asserted that Resurgent Companies "may share collected information … with each other in connection with administering and collecting accounts to the extent permitted under the [FDCPA] or applicable state law." *Id*. Finally, the notice stated that Resurgent Companies do not share collected information with third parties "except as permitted … under the [FDCPA] and applicable state law." *Id*.

The letter confused and intimidated Giannini. She did not understand whether the privacy notice was legal or legally required. *Id*. ¶ 90. Giannini was also confused because the privacy policy applied to current and former customers of Resurgent Companies, and she was neither. *Id*. ¶¶ 71–72, 83. She claims that the letter used confusing and intimidating language, and that "the broad and expansive nature" of the notice "only served to confuse [Giannini] as to her legal rights and purported relationship with the so-called Resurgent Companies." *Id*. ¶¶ 84–85. And because she did not understand the relationships between UCB, the Resurgent Companies, and her bank (the original creditor), Giannini "was worried that her debt would be flipped to any number of the Resurgent Companies." *Id*. ¶ 89. As a result, Giannini claims, she was "unwilling to consummate the discounted payment options" offered in UCB's April letter (discussed below), missed the deadline to pay, and suffered another hit to her credit score. *Id*. ¶¶ 91–93.

In April, Giannini received a second letter from UCB. The April letter contained the same creditor and account information as the March 16 letter, but contained three new offers to settle for less than the full amount of the debt (a single payment offer, a multiple payment offer over six months, and a multiple payment offer over twelve months). *Id.* ¶ 52. Below each offer, UCB again reminded Giannini that "[w]e are not obligated to renew this offer." *Id.* ¶¶ 50, 52. After reading this language, Giannini worried that she would not have another chance to settle and avoided paying off other creditors to try to make one of UCB's settlement offers work. *Id.* ¶¶ 57–58. Giannini was again unable to obtain the funds needed to accept one of the settlement offers; her other neglected debts accrued interest and remained in default status, and her credit score declined. *Id.* ¶¶ 60–61.

Giannini sues UCB under the FDCPA, claiming that the March 16 letter, the inclusion of the creditor's privacy notice, and the April letter violated 15 U.S.C. §§ 1692e and 1692f. *Id.* ¶¶ 37–38, 53–56, 83, 85, 112–149. UCB moves to dismiss, for lack of standing and failure to state a claim.

## III.   Analysis

### A.   Article III Standing

The authority of federal courts extends only to "cases" or "controversies." U.S. Const. Art. III, § 2, cl. 1. Standing doctrine is "rooted in the traditional understanding of a case or controversy," and is a threshold requirement in every federal case. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish Article III standing, "a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is

concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)). At the pleading stage, a plaintiff must clearly allege facts demonstrating each of these elements. *Spokeo*, 136 S. Ct. at 1547. Only the injury-in-fact element is in question here, which requires a plaintiff to show that "she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

To plead a cognizable Article III injury in the FDCPA context, a plaintiff must plausibly allege that defendant's statutory violation led her to take some detrimental step causing a real, concrete harm. *See Smith v. GC Services Limited Partnership*, 986 F.3d 708, 710 (7th Cir. 2021); *see also Larkin v. Finance System of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020). A bare allegation of an FDCPA violation— whether based on a procedural or substantive provision of the statute—is not enough. *See Larkin*, 982 F.3d at 1065–66; *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 331–32 (7th Cir. 2019). Put another way, a plaintiff must allege that she suffered an actual or imminent concrete harm because of the defendant's FDCPA violation; the mere allegation of a statutory violation itself, or a dunning letter that annoys, confuses, or intimidates the plaintiff, is insufficient. *See Nettles v. Midland Funding LLC*, 983 F.3d 896, 900 (7th Cir. 2020) (no Article III injury when plaintiff "does not

allege that the statutory violations harmed her in any way or created any appreciable risk of harm to her"); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071–72 (7th Cir. 2020) (allegations of annoyance or intimidation by dunning letter not legally cognizable injury); *see also Spuhler v. State Collection Service, Inc.*, 983 F.3d 282, 286 (7th Cir. 2020) ("[F]or a concrete injury to result from a dunning letter's exclusion of a statement about accruing interest, that exclusion must have detrimentally affected the debtors' handling of their debts.").

Giannini has adequately alleged a concrete Article III harm. An FDCPA violation might cause an Article III injury "if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Markakos v. Medicredit, Inc.*, No. 20-2351, 2021 WL 1937267, at *2 (7th Cir. May 14, 2021) (citing *Larkin*, 982 F.3d at 1066). That is what we have here. Giannini alleges not only that UCB violated the FDCPA, but also that its alleged violations caused her "to make incorrect decisions about [her] finances." [21] ¶¶ 97, 102. Specifically, she alleges that UCB's letters violated the FDCPA by creating a false sense of urgency that led her to unsuccessfully attempt to secure funds to accept discounted offers. As a result, Giannini says, her other debts remained in default and accrued interest, she received derogatory credit reports, and her credit score declined. Giannini's allegations are therefore distinguishable from the several recent cases cited above, where plaintiffs failed to tie the alleged FDCPA violations to any detrimental step or concrete harm. *See Smith*, 986 F.3d at 711 ("Standing often depends on what theory

a plaintiff advances and how injury would be proved.") (citing *Thornley*, 984 F.3d at 1248–49)).

Accordingly, Giannini has shown that an Article III case or controversy exists between the parties, and the court has subject-matter jurisdiction.

### B.    Fair Debt Collection Practices Act

The FDCPA aims to protect consumers by eliminating abusive debt collection practices. *See* 15 U.S.C. § 1692(e). The Act forbids the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. A debt collector violates this section if it falsely represents "the character, amount, or legal status of any debt." *Id.* § 1692e(2)(A). The FDCPA also prohibits "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). To determine whether a practice is "false, deceptive, or misleading," courts evaluate disputed language from the standpoint of an unsophisticated debtor. *See Johnson v. Enhanced Recovery Co., LLC*, 961 F.3d 975, 982 (7th Cir. 2020). The unsophisticated debtor is uniformed and naive, but possesses basic knowledge of the financial world and is capable of making basic logical deductions and inferences. *See id.*

In addition, a debt collector may not use "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. While this catch-all phrase "is 'as vague as they come,' that does not mean it has unlimited scope." *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 625 (7th Cir. 2020) (quoting *Todd v. Collecto, Inc.*, 731 F.3d 734, 739 (7th Cir. 2013)). Section 1692f provides a non-

exhaustive list of eight illustrative examples of unfair or unconscionable means—none of which are applicable here—but the statute does not define "unfair" or "unconscionable." Courts assess practices challenged under this provision "based on the plain meaning of 'unfair' and 'unconscionable' in the context of the FDCPA, and the policy-laden questions embedded in the rule" the plaintiff seeks. *Zablocki*, 968 F.3d at 627. More simply, the question is whether the practice at issue is "outrageous" or "equal[s] an injustice, partiality, or deception" that amounts to an abusive debt-collection practice that the FDCPA seeks to eliminate. *Id.*

Giannini makes two arguments in support of her FDCPA claims. First, she claims that UCB's March and April letters violate the FDCPA because they included the phrase "we are not obligated to renew this offer."[3] Second, she argues that the privacy notice violated the Act because its inclusion was not legally required, it confused and intimidated her regarding the true owner of the debt, and because it implied that she was a current or former customer of the Resurgent Companies. Both arguments lack merit.

Binding circuit precedent precludes Giannini's first argument. She claims that inclusion of the phrase "we are not obligated to renew this offer" unlawfully created a false sense of urgency and suggested that UCB would not renew its settlement offers. As a matter of law, however, inclusion of the exact phrase Giannini challenges

---

[3] In her brief, Giannini references and reproduces a third UCB letter from May 2020. [28] at 8–9. Giannini's complaint, however, is based solely on the March and April letters. In any event, the letter is materially identical to the April 2020 letter (the single payment offer is for the exact same amount, though the dollar amounts for the two other offers slightly differ), so it would not alter the analysis or the outcome. *See id.* at 9.

provides safe harbor for even the unsophisticated consumer "against receiving a false impression of his options" because "even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007). What's more, even when a dunning letter includes other language suggesting that a consumer must settle his debt "in the most expeditious manner possible," inclusion of the safe-harbor phrase at the end of the letter "cure[s] any misimpression that an unsophisticated consumer might have formed concerning the meaning of the settlement offers." *Preston v. Midland Credit Mgmt., Inc.*, 948 F.3d 772, 785 (7th Cir. 2020).

Under *Preston* and *Evory*, UCB did not violate the FDCPA by informing Giannini that it was not obligated to renew its settlement offers. Giannini acknowledges that these precedents stand in her way, but she argues that *Preston* and *Evory* "missed the mark" and asks me to instead apply a concurring opinion from *Preston*. [28] at 9, 11. That's not how precedent works, and in any event, I agree with *Evory* and *Preston* that advising a consumer that the debt collector is not obligated to renew an offer is truthful, accurate, not coercive, and not unfair.

That leaves Giannini's privacy-notice argument. Giannini claims that the privacy notice violated §§ 1692e and 1692f of the FDCPA because it was not legally required and served no purpose "other than to … intimidate and confuse" her "by implying that [she] was a current or former customer of one or more of the Resurgent Companies." [21] ¶¶ 83–85, 118, 130, 139, 147; [28] at 13.[4] And, contradicting her

---

[4] Giannini claims that the privacy notice "only served to emphasize that Plaintiff's debt could be sold between" the Resurgent Companies. [28] at 13. It is unclear how, as the privacy notice

earlier claim that she avoided paying other creditors in an attempt to take advantage the April letter's offers, *see* [21] ¶¶ 57–61, she claims that the privacy notice made her "unwilling to consummate the discounted payment options" in the April letter. *Id.* ¶ 91.

Giannini has not plausibly alleged that UCB's inclusion of the privacy notice violated the FDCPA. Indeed, she concedes that the substance of the notice did not contain false, deceptive, misleading, unfair, or unconscionable information. *See* [28] at 14. She posits, however, that the notice was not required by law and "totally unnecessary," so its inclusion was inherently confusing and intimidating. *Id.* But "unnecessary" is hardly synonymous with "unfair," and voluntarily including an accurate statement of a creditor's privacy policy is not a practice that is false or deceptive, let alone unconscionable. And Giannini does not allege that UCB unlawfully collected or shared her information with anyone.[5]

---

nowhere mentions the sale of her debt. Giannini's confusion appears to stem, at least in part, from the March 13 letter from her bank, notifying her of the sale of her debt to Sherman. But whether the bank misreported the new creditor—or Sherman sold the debt to LVNV after March 13 but before March 16—any confusion caused by the third-party bank's letter has no bearing on the lawfulness of UCB's letters.

[5] While the motion to dismiss was pending, Giannini moved for leave to cite additional authority. [30]. That motion is granted. But the case Giannini cites, *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021), is inapt. *Hunstein* held that a debt collector violated 15 U.S.C. § 1692c(b) when it electronically transmitted the plaintiff's data to its dunning-letter vendor without the plaintiff's consent. *See id.* at 1344, 1352. The FDCPA provision at issue in *Hunstein*, however, generally prohibits debt collectors from communicating with third parties about the collection of a debt without the debtor's consent. Here, there is no allegation that UCB transmitted any of Giannini's information unlawfully or without her consent. And contrary to Giannini's arguments in her motion, *see* [30] ¶¶ 11, 13–14, the privacy notice's suggestion that sharing personal information could, in some instances, comply with the FDCPA is not false or misleading. As *Hunstein* notes, § 1692c(b) alone includes several exceptions that demonstrate some transmission can be lawful under the FDCPA. *Hunstein*, 994 F.3d at 1344, 1349–51.

### C.      Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), courts should freely give leave to amend when justice so requires. Ordinarily, an initial dismissal for failure to state a claim should be without prejudice, unless it is certain from the face of the complaint that any amendment would be futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015).

Amendment would be futile here. Giannini attaches the communications at issue, acknowledges that binding Seventh Circuit precedent defeats her safe-harbor claims, and concedes that there is nothing false or misleading about the privacy notice. Giannini has not requested leave to amend or explained how she could cure the defects in her complaint. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("[A] district court does not abuse its discretion by denying a motion for leave to amend when the plaintiff fails to establish that the proposed amendment would cure the deficiencies identified in the earlier complaint.").

The complaint is dismissed with prejudice.

## IV.     Conclusion

The motion for leave to cite additional authority, [30], is granted. Defendant's motion to dismiss the amended complaint, [23], is granted. Plaintiff's claims are dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: May 18, 2021

13